IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN KUIVILA, | ) | CASE NO. 4:14-cv-01593 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| CITY of NEWTON FALLS, OHIO, et al., | ) | |
| | ) | |
| Defendants | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| | ) | |

## I.      Introduction

Plaintiff John Kuivila ("Kuivila") was employed by Defendant City of Newton Falls, Ohio ("City" or "Newton Falls") as its Chief of Police from 2008 until 2013.  In February 2013, after learning of complaints made against Kuivila by two of his subordinates, the Newton Falls City Council voted unanimously to terminate him pursuant to a provision of his contract that permitted a termination without cause.  Kuivila filed this case in which he seeks damages, alleging that he was wrongfully terminated in retaliation for his complaints about sexual harassment, including his filing of an EEOC Charge in May 2010.  He asserts retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and under 42 U.S.C. § 1983.  Doc. 21; Doc. 50-1, p. 6.[1]

Defendants are the City and seven individuals.  Five of the individual Defendants were members of City Council at the time Kuivila was terminated: Mary Ann Johnson ("Johnson"),

---

[1] Kuivila has also contested his termination in a state court case alleging, *inter alia*, a state law claim for retaliation. *Kuivila v. City of Newton Falls*, Trumbull County Court of Common Pleas Case No. 2014cv1428. Summary Judgment was granted in favor of the City and other defendants in that case on January 29, 2016. *See* Doc. 57-1. Kuivila has appealed that judgment. Doc. 59.

Richard Monteville ("Monteville"), Nancy Hoffman ("Hoffman"), Philip Beers ("Beers"), and Richard Zamecnik ("Zamecnik").  One Defendant, Jim Luonuansuu ("Luonuansuu"), had been a member of City Council prior to that time and one Defendant, Jack Haney ("Haney"), was, and remains, the City Manager.[2]

Defendants have filed a Motion for Summary Judgment seeking dismissal of this action with prejudice. Doc. 39.  The Motion has been fully briefed.[3]  Both parties requested the opportunity to submit post-reply briefing.[4]  While the Court generally discourages additional briefing, the Court **GRANTS** Kuivila's request to file a sur-reply (Doc. 53) and Defendants' request to file a sur-sur-reply (Doc. 54) and deems them filed.

As discussed more fully below, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.  With respect to both his Title VII and § 1983 claims, Kuivila has presented no evidence from which a reasonable jury could conclude that there was a causal link between his complaints of sexual harassment and his termination.  That is so for several reasons, including that Kuivila has no evidence that "the deciding margin" in the unanimous vote to terminate him was supplied by members of City Council who were motivated by a desire to retaliate against him because of his complaints regarding sexual harassment.  *See Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2006).  His claims fail for the additional reason that there is no genuine issue of material fact

---

[2] Kuivila's original Complaint also named a former Mayor, Patrick Layshock ("Layshock"), as a Defendant and alleged that Kuivila was terminated in retaliation for his investigation of Layshock.  The Court granted Kuivila's Motion to Amend Complaint dismissing Defendant Layshock, including substantive allegations relating to Layshock, without prejudice. Doc. 32, Doc. 38.  As a result, Kuivila's allegations with respect to Layshock were stricken. Doc. 40.

[3] Kuivila filed an Opposition (Doc. 50) and Defendants filed a Reply (Doc. 52).

[4] Kuivila sought leave to file supplemental authority or in the alternative a response to Defendants' Reply, i.e., a sur-reply.  Doc. 53.  Defendants opposed Kuivila's request or, in the alternative, requested that the Court consider their additional arguments presented in their opposition, i.e., a sur-sur-reply.  Doc. 54.

regarding the City's articulated non-discriminatory reason for terminating him; indeed, he has made admissions that support the City's position on that issue.  Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 39) and **DISMISSES WITH PREJUDICE** Kuivila's claims against Defendants.

## II.      Claims Alleged

In Count I – Retaliation – Title VII, Kuivila alleges that he engaged in protected activity when he complained about sexual harassment by Defendant Johnson and that he was retaliated against for making such complaints.  Doc. 21, ¶¶  23-30, 32, 38-43.

In Count II – First Amendment Retaliation – Section 1983, Kuivila alleges that Defendants' conduct was in retaliation for exercising his legitimate and protected First Amendment rights, including reporting, complaining and exposing the sexual harassment of Defendant Johnson as a matter of public concern.  Doc. 21, ¶¶ 32, 44-49.

## III. Background Facts

### A.      Kuivila's employment with Newton Falls as Chief of Police

Kuivila was hired by Newton Falls as Chief of Police in the fall of 2008 as an at-will employee.  Doc. 35-1, p. 15:21-25; Doc. 50-3, pp. 1-2, ¶ 2; Doc. 50-5, pp. 42:10-16.  On September 21, 2009, Kuivila and Newton Falls entered into an Employment Agreement ("Contract") for the Chief of Police position.  Doc. 21-1, pp. 1-7;[5] Doc. 50-3, p. 2, ¶ 2; Doc. 50-5, pp. 42-43:1-8.  The term of the Contract was September 21, 2009, to September 20, 2014. Doc. 21-1, pp. 1-7.

Under Section 11(A) of the Contract, Kuivila could be terminated without a showing of cause when "[t]he majority of Council votes to terminate the Employee [Kuivila] at a duly

---

[5] The Contract is attached to Kuivila's Amended Complaint at Doc. 21-1, pp. 1-7.  It is also contained in other documents filed in connection with the summary judgment briefing.  *See* Doc. 35-2, pp. 26-32 and Doc. 50-10, pp. 30-36.

3

authorized public meeting."  Doc. 21-1, p. 2.  Under Section 11(D), the City could terminate

Kuivila for disciplinary reasons.  Doc. 21-1, p. 4.  No  member of Council acting alone had the

authority to discipline or terminate Kuivila.  Doc. 35-1, p. 127:17-23.

In the event of termination under Section 11, except for termination pursuant to Section

11 paragraphs D and F, the City was obligated to pay Kuivila a minimum severance payment

equal to six months of salary at his then current rate of pay; compensation for all eligible

accrued sick leave, vacation time and all eligible paid holiday leave; and six months of health

and life insurance benefits.  Doc. 21-1, p. 5 (Section 12 of Contract).

Kuivila's Contract was the subject of an unsuccessful referendum vote.  Doc. 50-5, pp.

44:1-45:4; Doc. 50-7, p. 52:14-22.  Newton Falls Mayor Lyle Waddell ("Mayor Waddell" or

"Waddell"),[6] who describes himself as Kuivila's friend, testified that Kuivila was liked by some

and disliked by some during his tenure.  Doc. 50-8, p. 65:3-8; Doc. 50-8, p. 66:17-23.

**B.** **Kuivila's allegations regarding sexual harassment, his complaints, and retaliation against him**

Kuivila alleges that, during his employment, he was sexually harassed by Defendant

Johnson on a number of occasions both before and after Johnson was elected to serve as a

member of the Newton Falls City Council ("City Council" or "Council").  Doc. 21, pp. 6-7, ¶

23; Doc. 35-1, p. 62-64:1; Doc. 35-1, p. 66:4-25-67:1-2; Doc. 50-3, p. 2, ¶ 4; Doc. 50-3, pp. 3-5,

¶¶ 6, 8-9.  Kuivila described several similar incidents of harassment, all involving comments

made by Johnson in public settings in which she referred to Kuivila's genitalia.  Doc. 50-3, pp.

4-5, ¶ 8.  Kuivila alleges that he complained about the harassment and that, because of his

complaints, he was subjected to retaliatory action, including being treated by Council in a

contentious and unprofessional manner and being terminated by Council.  Doc. 50-2, pp. 7-8

_____

[6] Mayor Waddell took office in 2010 following Layshock's recall.  Doc. 50-8, p. 24:10-16.

The first instance of alleged sexual harassment cited by Kuivila occurred on November 2, 2009, one day before Johnson was elected to City Council.  Doc. 35-1, p. 62:2-25.  The second occurred on November 11, 2009, after Johnson was elected to Council but before she took office on January 1, 2010. Doc. 35-1, p. 63:1-13.

Kuivila alleges that Johnson continued to sexually harass him after she took office.  Doc. 50-3, pp. 4-5, ¶ 8.  Kuvilia describes one specific instance of alleged sexual harassment that occurred on January 11, 2010.  Doc. 50-3, pp. 4-4, ¶ 8.  He also states that he interacted with Johnson three or four times between January 11, 2010, and April 21, 2010,[7] and that Johnson made similar unwelcome sexual comments to him during each of those interactions.  Doc. 50-3, pp. 4-5, ¶ 8.  Kuvilia further states that, after April 2010, he experienced many incidents of similar comments made by Johnson, which were based on his gender, and were sexually suggestive, offensive, and unwelcome.  Doc. 50-3, p. 5, ¶ 9.

Johnson admits that she referred to Kuvila's genitalia in a comment to a friend that occurred during a November 2009 Council meeting.  Doc. 50-6, pp. 21:22-23:15.   Finance Director Reimbold overheard Johnson make comments regarding Kuivila.  Doc. 50-3, p. 4, ¶ 8; Doc. 50-6, pp. 12:22-13:15; Doc. 50-6, pp. 63:17-64:7; Doc. 50-7, pp. 46:8-25; Doc. 50-7, pp. 48:16-49:17.  Johnson denies making statements regarding Kuivila during a January 2010 Council meeting.  Doc. 50-6, p. 14:4-15.

Kuivila states that he complained to City Manager Haney, to the City's Law Director, and to Council member Hoffman about the sexual harassment by Johnson.  Doc. 39-1, p. 1, ¶¶

---

[7] Kuivila states that he decided in April 2010 to file an EEOC charge against the City based on Johnson's conduct, the City's failure to address his complaints, and retaliation that resulted from his complaints.  Doc. 50-3, pp. 6-7, ¶ 14.  Kuivila's EEOC charge was filed on May 10, 2010.  Doc. 35-1, p. 46:18-23.

4-6; Doc. 50-3, pp. 2-6, ¶¶ 4, 6-11.  Kuivila made the following written complaints regarding

Johnson's alleged sexual harassment:

- April 21, 2010, email to Council member Hoffman – detailing incidents of alleged sexual harassment by Johnson towards Kuivila in November 2009 and on January 11, 2010.  Doc. 39-7; pp. 1-4; Doc. 50-3, pp. 3-5, ¶¶ 7-8.

- May 3, 2010, email to City Law Director Richard Schwartz – detailing the same information relayed to Council member Hoffman on April 21, 2010; detailing events that occurred at an April 19, 2010, council meeting, including Council's appointment of Johnson to the Safety Committee, which Kuivila indicated directly affected him, and referring to communications Kuivila had with the EEOC.  Doc. 39-7, pp. 5-8; Doc. 50-3, p. 5, ¶ 10.

- May 10, 2010, EEOC charge – Doc. 35-1, pp. 46:14-25-47:1; Doc. 35-2, p. 42; Doc. 50-3, pp. 6-7, ¶ 14.

- July 27, 2010, email to Haney to inform him that a Public Safety Committee meeting was scheduled that Johnson would be attending and stating that Kuivila was uncomfortable with the situation.  Doc. 50-5, p. 142:5-13; Doc. 50-10, p. 88.

- July 6, 2011, letter to the Trumbull County Sheriff alleging that Johnson had filed a false and unfounded charge against him in retaliation for his filing the EEOC charge, copied to City Finance Director Tracy Reimbold, the City Law Director, City Manager Haney, the County Prosecutor, and attorney Kenneth Myers.  Doc. 50-3, p. 6, ¶ 12; Doc. 50-10, pp. 85-87.

In addition to the foregoing, Kuivila states that some of his complaints to Haney about

incidents of sexual harassment by Johnson were sent by email, including emails sent after April

2010.  Doc. 35-1, pp. 71:22-73:21; Doc. 50-3, pp. 2, ¶ 4.  Those emails have not been provided

and Kuivila speculates that they may have been deleted.[8]  Doc. 50-3, pp. 2-3, ¶ 5.

---

[8] Kuivila speculates that individuals with access to his and Haney's email accounts *may have* deleted his emails to Haney.  Doc. 50-3, pp. 2-3, ¶ 5 (emphasis supplied).  Kuivila's unsubstantiated claim regarding why no documentation exists to support his claim that he sent a great number of emails to Defendant Haney is not based on personal knowledge and therefore is insufficient evidence for summary judgment.  *See Wuliger v. Eberle*, 414 F.Supp.2d 814, 818 (N.D.Ohio 2006) ("It is axiomatic that affidavit evidence must be based upon personal knowledge.  *See* 11 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, § 56.14[1][c] (3d ed. 2005). Information averred to the best of the affiant's knowledge or belief is insufficient to meet the requirements under Rule 56(e).").

1. **2010 EEOC Charge**

In his May 10, 2010, EEOC Charge of Discrimination, Kuivila alleged discrimination

based on sex. Doc. 35-2, p. 42. He stated:

> I started working for the City of Newton Falls in October 2008; my most recent
> position is Chief of Police. On November 2, 2009 and November 11, 2009, I
> was sexually harassed. On January 19, 2010, I was harassed. In March 2010,
> my job was threatened.[9]
>
> On November 2, 2009, and again on November 16, 2009, I was subjected to
> unwanted sexual advances. In each instance when I complained to city Manager,
> Jack Haney, nothing was done. On January 11, 2010, I was harassed and my job
> was threatened. On January 19, 2010, I was harassed. In March 2010,
> employment benefits were threatened.
>
> I believe I have been discriminated against due to my sex, male and retaliated
> against for complaining about sexual harassment in violation of Title VII of the
> Civil Rights Act of 1964, as amended.

Doc. 35-2, p. 42.

The EEOC issued Kuivila a right to sue letter in which it stated it had reached no

conclusion on the merits. Doc. 21, p. 7, ¶ 24; Doc. 35-1, pp. 75:23-76:15; Doc. 35-2, p. 47.

Kuivila did not file suit on the 2010 EEOC charge. Doc. 21, p. 7, ¶ 24.

2. **Alleged Continuation of Sexual Harassment**

Kuivila alleges that Johnson continued to sexually harass him after he filed the 2010

EEOC charge, citing a sexually explicit comment allegedly made by Johnson about him in the

summer of 2012 during a police versus fire department softball game in which he was playing.

Doc. 35-1, pp. 71:13-21. He did not hear the comment but contends that it was heard by his

---

[9] The incidents on January 19, 2010, and in March 2010 were not sexual in nature. Rather, Kuivila indicated that
they pertained to City Council's attempt to take away his City car, which he stated he was entitled to under his
Contract. Doc. 35-1, pp. 58:15-25, 61:5-22; *see also* Doc. 35-2, pp. 45-46 (letter from Kuivila's attorney regarding
use of "take-home" car). According to Kuivila, Council was considering requiring Kuivila to drive a marked police
car rather than the unmarked City vehicle he had been driving. Doc. 35-1, pp. 57:6-61:22. Ultimately, Council
took no action to either change or take away Kuivila's car. Doc. 35-1, p. 61:15-22.

wife and two minor daughters.  Doc. 35-1, p. 71:13-21; Doc. 50-4, pp. 1-2, ¶¶ 3-7.  Kuivila

alleges that he complained to Haney about the comment Johnson made at the softball game.

Doc. 35-1, pp. 71:22-72:6.  Johnson denies making a comment at the softball game (Doc. 50-6,

pp. 22:17-24:17) and Haney does not recall any complaint by Kuivila regarding the alleged

incident. Doc. 50-5, p. 138:6-11. The only evidence of Johnson's alleged 2012 comment that is

based on personal knowledge is an affidavit by Kuivila's wife (Doc. 50-4, pp. 1-2, ¶¶ 3-7).

## C.      January 2013 Complaints against Kuivila

In January 2013, City Manager Haney received complaints from two female Newton

Falls' police department employees, Ashley Grunder ("Grunder"), an administrative assistant,

and Sheri Jervis ("Jervis"), a part-time police officer, alleging harassment by Kuivila.  Doc. 39-

1, pp. 2-3, ¶¶ 7-13.  Initially, the complaints were verbal.  Doc. 39-1, p. 2, ¶ 7; Doc. 39-2.  On

January 11, 2013, Grunder and Jervis provided written statements regarding their complaints

and an attorney for Grunder and Jervis sent a letter to Haney and the City Law Director (Doc.

39-1, pp. 2-3, ¶¶ 10-13; Doc. 39-5), causing Haney concern that legal action against the City

might follow (Doc. 39-1, p. 3, ¶ 14).

In her written complaint, dated January 11, 2013, Grunder stated:

> I have started feeling uncomfortable in my current work position as records in
> the police department.  When I returned from maternity leave I noticed I was
> getting comments made to me from the police chief John Kuivila.  I felt after a
> period of time the comments referencing my appearance and certain body parts
> were becoming extremely inappropriate for him being my supervisor.  I then
> asked him that all comments to be stopped immediately.  I then received a phone
> call from his wife while I was at work reading me a letter she found expressing
> his feelings about me.  At this point I felt extremely uncomfortable and went to
> speak with Jack Haney the City Manager with my concerns.

Doc. 39-1, p. 2, ¶ 10; Doc. 39-3.

Grunder advised Haney that Kuivila had made comments about her chest.  Doc. 39-1, p. 2, ¶ 11.  The letter Kuivila's wife read to Grunder, which was referenced in Grunder's complaint quoted above, was drafted by Kuivila to be sent to Grunder but he had not actually sent it to her.[10]  Doc. 35-1, pp. 83:11-84:2.   Kuivila was present when his wife called Grunder regarding the letter.  Doc. 35-1, p. 83:15-20.

Jervis advised Haney that she too had received a call from Kuivila's wife and she had read the letter composed by Kuivila regarding Grunder and had discussed it with Kuivila.[11] Doc. 39-1, p. 2, ¶ 9; Doc. 39-2.

In Jervis' written complaint, also dated January 11, 2013, she stated:

I, Officer Sheri Jervis feel that at this present time I am encountering and working within a hostile work environment.

I was contacted by Chief John Kuivila regarding a personal matter brought to my attention by Chief Kuivila.   Wherein the Chief stated if I discussed the information he made a threat.

This has placed my mindset that I am in the enviroment which is hostile, and I am fearful.

The information that was discussed was in reguards to a Mrs. Ashley Grunder.

Doc. 39-1, p. 3, ¶ 12; Doc. 39-4.

Haney instructed Kuivila to submit a written statement in response to the allegations by Grunder and Jervis.  Kuivila's statement dated January 11, 2013, (Doc. 35-1, pp. 90:8-91:25) states:

\*\*\*

---

[10] The letter no longer exists.  Doc. 35-1, p. 85:2-3.  Kuivila indicated that as part of a marriage counseling process, it was suggested that he and his wife "get rid of all that stuff."  Doc. 35-1, p. 85:4-7.  Kuivila's wife had printed a copy of the letter but got rid of it later because she did not want to see it anymore.  Doc. 56-1, pp. 14:16-15:2.

[11] Kuivila's wife testified that she and her husband called Jervis the same day that she called Grunder.  Doc. 56-1, pp. 20:18-22:11; Doc. 56-1, pp. 24:14-26:12.

With there being no questions asked thus far all I can do is explain the following: Ashley Grunder and I have exchanged text messages, google chats, emails and or other electronic communications both related to and not related to work. On January 7, 2013, my wife Danielle discovered messages and or electronic communications. Although, they were drafted in my personal capacity and one had only been drafted and not transmitted nor provided to Grunder. Apparently my wife contacted Grunder and confronted her about the aforementioned communications.

Following this confrontation and later in the day on Monday, January 7, 2013, you made contact with me regarding this incident and directed me to write a statement regarding this incident which you are now being provided with.

Doc. 35-2, pp. 67-68.

During his deposition, Kuivila acknowledged showing Jervis the letter he had written to Grunder. Do. 35-1, p. 84:11-22. Kuivila also acknowledged telling Jervis not to discuss it with anyone stating that he did so because he did not want everybody knowing about it since it was none of anybody's business. Doc. 35-1, p. 89:1-11. He also admitted that the letter was not appropriate. Doc. 35-1, p. 89:10-11. Kuivila did not recall making comments regarding Grunder's breasts after she returned from maternity leave but admitted that he had probably made comments about her body and agreed that making such comments about a subordinate's body would not have been appropriate. Doc. 35-1, p. 89:15-23.

With Grunder's agreement, she was reassigned from the police department to the community center. Doc. 35-1, p. 86:3-6; Doc. 39-2, Doc. 39-5, p. 1.

**D.    Kuivila's termination**

Beginning in January 2013, following the allegations made by Kuivila's subordinates Grunder and Jervis, City Council met a number of times to discuss personnel matters relating to Kuivila. Doc. 39-6, pp. 1-3, ¶¶ 4-8. On January 28, 2013, City Council met during a regular session and adjourned into executive session "for the purpose of investigation of complaints against the Police Chief." Doc. 39-6, p. 1, ¶ 4; Doc. 39-8, p. 4. Following adjournment of

executive session, a motion "to direct the City Manager and Law Director to determine steps for disciplinary action for the Police Chief up to and including termination of his contract and to advise Counsel of such" was made and passed unanimously.  Doc. 39-6, p. 1, ¶ 4; Doc. 39-8, p. 4.

On February 4, 2013, City Council met during a regular session and adjourned into executive session "to consider disciplinary action for the Police Chief up to and including termination."  Doc. 39-6, p. 2, ¶ 5; Doc. 39-8, p. 8.  Following adjournment of executive session, a motion "that City Council begin removal of the Police Chief for discipline reasons and invoke Section 11, Part D, of his contract and begin the pre-discipline hearing process" was made and passed unanimously.  Doc. 39-6, p. 2, ¶5; Doc. 39-8, p. 8.

On February 12, 2013, City Council held an emergency meeting.  Doc. 39-6, P. 2, ¶¶ 6-7.[12]  A motion was made and seconded to enter into executive session "for the purpose of personnel in reference to employment or dismissal of the Chief of Police."  Doc. 39-6, p. 2, ¶ 7; Doc. 39-10, p. 1.  Following adjournment of executive session, a motion to add to the agenda Ordinance 2013-02: *An Ordinance Terminating the Employment Agreement Between the City of Newton Falls and Police Chief John Kuivila and Declaring an Emergency* passed unanimously.[13]  Doc. 39-6, p. 2, ¶ 7; Doc. 39-10, p. 1; Doc. 39-11.   Ordinance 2013-2 contained two recitals: (A)  that  Council was exercising its right to terminate the Police Chief under section 11(A) of his Contract;  and (B) that "Council believes the Chief of Police has undermined his ability to remain an effective leader."  The ordinance also declared that it was an emergency measure.  Doc. 39-11.

---

[12]  One day's notice was provided for the emergency meeting.  The notice stated that the purpose of the meeting was to "[m]otion to adjourn into executive session for the purpose of personnel in reference to employment or dismissal of the Chief of Police."  Doc. 39-6, p. 2, ¶ 6; Doc. 39-9, p. 2.

[13]  Also, a motion to add Resolution 03-2013: *A Resolution Appointing Acting Police Chief* passed unanimously. Doc. 39-10, p. 1.

Since Kuivila's Contract was terminated pursuant to Section 11(A) rather than "for cause," a severance payment and other benefits were provided pursuant to the terms of the Contract.  Doc. 35-1, pp. 127:24-25-128:1-2; Doc. 39-6, pp. 2-3, ¶ 8; Doc. 50-7, p. 25:1-10.

**E.     April 2013 EEOC Charge**

Following his termination, Kuivila filed a charge of discrimination with the EEOC, checking the boxes "sex" and "retaliation" as the alleged causes of discrimination.  Doc. 35-1, pp. 47:10-48:3; Doc. 35-2, pp. 43-44.  In his 2013 EEOC charge, Kuivila alleged that November 2009 was the earliest date that the alleged discrimination occurred and February 12, 2013, was the latest date that the alleged discrimination occurred.  Doc. 35-2, p. 43.  Kuivila indicated that his charge of discrimination was a "continuing action."  Doc. 35-2, p. 43.  More particularly he alleged:

> John Kuivila began working for the Newton Falls Police Department as its Chief of Police in October 2008. . . . . [14]
>
> In November 2009, he was sexually harassed and complained about such to the City Manager.  Later in 2010, he received threats to his job and benefits as retaliation.  In May 2010, he filed a charge of discrimination, which came before this agency as Charge No. 532-2010-01100.  This Charge resulted in a finding of cause, but Mr. Kuivila did not choose to file an action based on his right to sue letter.
>
> Since Mr. Kuivila brought his EEOC charge and after cause was found,[[15]] he experienced continued retaliation from his employer, which resulted in his wrongful termination on February 12, 2013.

Doc. 35-1, p. 43.

On June 5, 2014, Kuivila received a right to sue letter from the EEOC.  Doc. 21, pp. 5-6, ¶ 17.  He filed this action on July 18, 2014.  Doc. 1.

---

[14] The 2013 EEOC Complaint also contained allegations that Kuivila had "incurred hostility and harassment" due to his investigation of former Mayor Layshock. As noted above, Layshock has been dismissed from this case and the allegations regarding Layshock have been stricken.

[15] Contrary to Kuivila's statement in his 2013 EEOC charge, the EEOC did not find cause with respect to the 2010 EEOC charge.  Doc. 35-1, pp. 74:16-76:15; Doc. 35-2, p. 47.

## IV. Summary Judgment Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  The movant "bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotations omitted).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).  "Inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.* at 587 (internal quotations and citations omitted).  However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  The non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial. *Matsushita,* 475 U.S. at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Products, Inc.*

13

*v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248).  Thus, for a plaintiff to avoid summary judgment against him, "there must be evidence on which a jury could reasonably find for the plaintiff."  *Id..* at 252.  Accordingly, in determining whether summary judgment is warranted, a judge generally asks "whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."  *Id.* (emphasis in original) (internal citations omitted).

## V.  Analysis

### A.    Title VII Retaliation Claim

Kuivila's lawsuit is brought against the individual Defendants in their official and individual capacity.  Doc. 21, pp. 3-5, ¶¶6-13.    However, in his Amended Complaint, Plaintiff appears to be seeking judgment on Count I as to the Defendant City only.  Doc. 21, p. 12.  Nevertheless, to the extent that Kuivila seeks judgment against the individual Defendants, individual employees/supervisors are not subject to liability under Title VII.  *Wathen v. General Electric Co.*, 115 F.3d 400, 405-406 (6th Cir. 1997) (holding that "the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII"); *see also Yedes v. Oberlin College*, 865 F.Supp.2d 871, 877 (N.D. Ohio 2012) (relying on *Wathen* when finding no individual liability against employee on Title VII retaliation claim).   Accordingly, Kuivila's Title VII claims for individual liability against Defendants Johnson, Monteville, Hoffman, Beers, Luonuansuu,[16] Zamecnik, and Haney, are **DIMMISED WITH PREJUDICE**.

---

[16] Luonuansuu was not a member of council when City Council terminated Kuivila's Contract.  Doc. 39-1, p. 3, ¶ 15.  That is an additional reason he is entitled to summary judgment.

1. <u>**Title VII burden shifting framework**</u>

Title VII prohibits both "status-based discrimination" by employers as well as "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Tex Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2522 (2013) (citing 42 U.S. §2000e-2(a) and § 2000e-3(a)).  Here, Kuivila asserts a Title VII retaliation claim.  Similar to a Title VII discrimination claim, a plaintiff may establish a Title VII retaliation claim "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Weeks v. Mich. Dept. of Community Health,* 587 Fed. Appx. 850, 858 (6th Cir. 2014) (quoting *Imwalle v. Reliance Medical Products*, 515 F.3d 531, 543 (6th Cir. 2008).  Where a plaintiff seeks to establish a retaliation claim through circumstantial evidence, as Kuivila does, the claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id*; *see also Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

Under this burden-shifting framework, a plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *Laster*, 746 F.3d at 730.  Four elements are required to establish a *prima facie* case of retaliation under Title VII:  "(1) [Plaintiff] engaged in activity protected by Title VII; (2) Defendants knew that Plaintiff engaged in the protected activity; (3) Defendant took an action that was 'materially adverse' to Plaintiff, and (4) a causal connection existed between the protected activity and the materially adverse action." *Weeks*, 587 Fed. Appx. 850, 858 (citing *Laster*, 746 F.3d at 730).

Establishing a *prima facie* case of retaliation has been described as not onerous. *Nguyen v. City of Cleveland*, 229 F.3d 559, 565-566 (6th Cir. 2000).  However, the Supreme Court

made clear in *Nassar* that a "but-for" standard of causation, rather than the less demanding "motivating-factor" standard, applies in Title VII retaliation cases.  *Nassar*, 133 S.Ct. at 2533-2534 ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); *see also Laster*, 746 F.3d at 731 (A plaintiff's Title VII retaliation claim "must be proved according to traditional principles of but-for causation, which requires proof that unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.") (quoting *Nassar*, 133 S.Ct. 2517, 2533) (internal quotations omitted); *see also Raifsnider v. Lonz Winery, Inc.*, 2015 WL 5254979, * 7 (N.D .Ohio Sept. 9, 2015).   In other words, to establish a *prima facie* case of retaliation under Title VII, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S.Ct. at 2534; *see also Holloman v. Metropolitan Govt. of Nashville and Davidson County*, 2013 WL 5774879, * 4-5 (M.D. Tenn. Oct. 24, 2013) (recognizing that the burden of establishing a *prima facie* case of retaliation is less onerous but indicating that *Nassar* clarified that, in order to prevail on a retaliation claim, a plaintiff is required to produce evidence of but-for causation).[17]

 If a plaintiff establishes a *prima facie* case, "the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions." *Laster*, 746 F.3d at 730.  If the employer meets its burden of production, "the burden shifts back" to the plaintiff to show that the employer's "proffered reason was not the true reason for the employment decision." *Id.* (internal citations omitted).  "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.*

---

[17] Kuivila argues that he need not present evidence to show "but-for" causation to establish a causal link.  Doc. 50-2, pp. 20-21; Doc. 53-1, pp. 2-3.  However, in making this argument, he relies upon non-Sixth Circuit cases and/or cases that pre-date *Nassar*.

A plaintiff can show that the employer's stated non-discriminatory reason is a pretext for discrimination by demonstrating that the employer's "proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (internal citations omitted).

2. **Elements of *prima facie* case of retaliation**

a. **First Element – Protected Activity**

It is undisputed that Kuivila filed an EEOC charge in May 2010 in which he alleged sexual harassment by Defendant Johnson.  This is sufficient evidence from which reasonable jurors could conclude that Kuivila engaged in protected activity.

b. **Second Element – Defendants' Knowledge of the Protected Activity**

There is evidence that Defendants, including members of City Council, had knowledge of Kuivila's 2010 EEOC filing, which is sufficient evidence from which reasonable jurors could conclude that Defendants, including the Council members who made the decision to terminate Kuivila, had knowledge of his protected activity.

c. **Third Element – Materially Adverse Employment Action**

A "[p]laintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context." *Lester*, 746 F.3d at 731 (internal citations and quotations omitted).  Under the third element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Lester*, 746 F.3d at 731; *see also Raifsnider*, 2015 WL 5254979, * 6.

17

### *Termination*

It is undisputed that City Council terminated Kuivila in February 2013, which is sufficient evidence from which reasonable jurors could conclude that Kuivila suffered an adverse employment action.

### *Retaliatory Harassment*

A plaintiff may also satisfy the third element by showing that "the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor." *Weeks*, 587 Fed. Appx. at 858, n. 1; *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Although Kuivila is able to satisfy the third element based on his termination, in an apparent attempt to bolster his causation argument by showing that his protected activity occurred in close proximity to adverse employment action, he also argues that he satisfies the third element by showing that City Council engaged in retaliatory harassment towards him because he engaged in protected activity. Doc. 50-2, pp. 16-21 (relying on *Morris v. v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000)); Doc. 55, p. 3.

Kuivila contends that the alleged retaliatory harassment included the following actions that occurred at City Council or Council Committee meetings:

- After he started complaining about Johnson's conduct, Johnson was placed on the Safety Committee, which required Kuivila to interact with her. Doc. 35-1, pp. 69:21-70:23; Doc. 50-3, p. 5, ¶ 10; Doc. 50-3, pp. 6-7, ¶ 14.

- On April 5, 2010, Johnson referred to Kuivila's contract as cushy even though it was not and Johnson criticized Kuivila's attempt to obtain equipment for the police department.[18] Doc. 50-8, pp. 14:21-15:19.

- In late 2010, City Council rejected Kuivila's proposal for an OVI checkpoint. Doc. 35-1, pp. 79:18-83:10; Doc. 50-6, pp. 28:16-25; Doc. 50-8, pp. 18:12-13, 20:2-3.

---

[18] Mayor Waddell testified that Defendant Johnson also questioned Kuivila's contract in August 2009, before she was on City Council and before the first alleged incident of sexual harassment. Doc. 50-8, p. 15:9-10, 15-18.

- On February 7, 2011, City Council allowed the City's former chief to improperly take the podium at a council meeting to attack Kuivila unfairly in connection with the sale of firearms.  Doc. 50-8, p. 17:5-22; Doc. 50-8, pp. 23:4--24:3.

- Johnson continually, as late as June and December 2012, complained and attacked Kuivila on the council floor because he complained about her conduct.  Doc. 50-3, p. 7, ¶ 15; Doc. 50-8, p. 55:21-25; Doc. 50-5, pp. 145:24-146:1; Doc. 50-9, pp. 56:16-24.

- Johnson questioned Kuivila's attending FBI training although it was provided for in his Contract.  Doc. 50-5, p. 147:3-10.

- Council raised questions concerning Kuivila's relationship with a local car dealership and the purchase of vehicles from that dealership although vehicles had not been purchased.  Doc. 35-1, pp. 68:5-69:16; Doc. 50-5, pp. 147:11-149:12; Doc. 50-6, p. 29:4-30:13; Doc. 50-8, pp. 15:20-17:3, 18:22-19:4; Doc. 50-9, pp. 57:10-58:5.

Doc. 50-2, pp. 7-8.

To establish a retaliation claim based on alleged retaliatory harassment, a plaintiff must show that the alleged harassment was severe or pervasive.  *Morris*, 201 F.3d at 792; *see also Henry v. Abott Laboratories*, 2015 WL 5729344, * 7 (S.D. Ohio Sept. 30, 2015).  Kuivila's allegations fail to meet this standard.[19]

Kuivila has not presented evidence that City Council's questions regarding his work or his department's operations were more severe or pervasive after he filed the 2010 EEOC charge than before.  Furthermore, the alleged instances of retaliatory harassment consist primarily of scrutiny by City Council regarding Kuivila's work, the police department's budget, and the City's operations.   However, "increased scrutiny of work is not tantamount to an adverse

---

[19] Additionally, Kuivila cannot establish that the alleged instances of harassment constituted materially adverse action because his own sworn statement shows that alleged harassment by City Council did not dissuade him from continuing to lodge complaints.  *See* Doc. 50-3, p. 3, ¶ 6; Doc. 50-3, p. 6, ¶ 11 (Kuivila's affidavit indicating that he continued to lodge complaints regarding alleged harassment and retaliatory conduct through 2012).  *See Laster*, 746 F.3d at 731 (To establish that action is materially adverse, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."); *see also Raifsnider*, 2015 WL 5254979, * 6-8 (granting summary judgment to employer, in part, because employee could not demonstrate that employer took materially adverse action against the employee).

employment action" and "[i]f every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." *Henry,* 2015 WL 5729344, * 7 (internal citations omitted).  Indeed, if allegations such as Kuivila's were deemed sufficient to establish retaliatory harassment, the robust questioning by elected representatives that regularly occurs at council meetings in many municipalities would be stifled.

In light of the foregoing, the Court concludes that Kuivila has failed to demonstrate that reasonable jurors could find that conduct Kuivila contends constituted retaliatory harassment by Council was severe or pervasive and/or constituted materially adverse action.

### d.    Fourth Element – Causal Connection

The bulk of the parties' arguments relates to causation, the fourth element of a prima facie case of retaliation under Title VII.

"[T]he mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1314 (6th Cir. 1989) (internal citations omitted). Under the fourth element, a plaintiff is required "to prove that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Raifsnider*, 2015 WL 5254979, * 7 (quoting *Laster*, 746 F.3d at 731)(internal quotations omitted).  "In other words, 'Title VII retaliation claims must be proved according to the traditional principles of but-for causation.'" *Id.* (quoting *Nassar*, 133 S.Ct. at 2533).

### *Temporal proximity*

A plaintiff may be able to demonstrate a causal connection that is sufficient to establish a *prima facie* case in instances where there is close temporal proximity between when an employer learns of the protected activity and when the adverse employment action occurs. *Mickey*, 516 F.3d at 525.  However, "where some time elapses between when an employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* Also, in certain circumstances, "a lack of temporal proximity alone can be fatal to an attempt to establish a causal connection." *Fuhr v. Hazel Park School Dist.*, 710 F.3d 668, 675-676 (6th Cir. 2013), *reh'g denied* (Apr. 12, 2013) (two year gap between employee's protected activity and the first reported retaliatory conduct).

Defendants contend that Kuivila is unable to establish a causal connection between his protected activity and his termination because there was a significant gap in time between his protected activity in 2009 and 2010 and his termination in February 2013.  Kuivila argues that Defendants ignore evidence showing that there was later protected activity of which the Defendants were aware and that he was subjected to retaliatory harassment prior to his termination.  He argues that this circumstantial evidence, i.e., evidence of hostility towards him following his complaints, is sufficient to create an inference of retaliation.

In support of his claim that he engaged in protected activity after the filing of his May 2010 EEOC charge, Kuivila, relying on his own affidavit, contends that he complained to Defendant Haney about sexual harassment by Defendant Johnson through the summer of 2012 and complained to Defendant Haney and Mayor Waddell through the end of 2012 about

retaliation by City Council arising from his complaints regarding sexual harassment. Doc. 50-3, p. 6, ¶ 11; Doc. 53-1, p. 3.[20]   The statements in Kuivila's affidavit regarding his later complaints are conclusory in nature and fail to provide any detail regarding the alleged sexual harassment of which he complained. See Doc. 50-3, p. 2, ¶ 4 (Kuivila affidavit regarding emails sent to Haney regarding sexual harassment) (Doc. 50-3, p. 3, ¶ 6) (Kuivila affidavit regarding complaints made to Haney until the Summer of 2012 about sexual harassment by Johnson).[21] Further, in Kuivila's 2013 EEOC charge, there is no mention of any occurrences of sexual harassment by Johnson or complaints by Kuivila regarding sexual harassment after May 2010, nor has Kuivila supplied any documentation regarding these alleged later complaints.[22]  Doc. 35-2, p. 43.

Although Kuivila's sworn statement that he complained about Defendant Johnson's sexual harassment through 2012 lacks details and third party corroboration, considering said evidence in the light most favorable to him for purposes of summary judgment, there is an issue

---

[20] It appears that Kuivila is attempting to make a new retaliation claim in his briefs opposing Defendants' Motion for Summary Judgment.  The new claim is that his termination was in retaliation for his alleged complaints about retaliation.  Such a claim is barred since it was not encompassed in his 2013 EEOC charge.  See *Strouss v. Mich. Dept. of Corrections*, 250 F.3d 336, 342 ("[F]ederal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge . . . retaliation claims based on conduct that occurred *before* the filing of the EEOC charge must be included in that charge.")(emphasis in original) (internal citations omitted).

[21] Without specific reference to City Finance Director Reimbold as someone he complained to, Kuivila cites to Reimbold's deposition testimony to support his claim that he continually complained to Defendant Haney that he was in fear of retaliation after he complained to the City and EEOC regarding Defendant Johnson's conduct.  Doc. 53-1, p. 3. Reimbold's deposition testimony reflects that she was aware of Kuivila's concerns about retaliation and was aware that Haney had knowledge of Kuivila's concern that his complaints about Defendant Johnson were affecting his job**.** *See* e.g., Doc. 50-7, p. 50:9-17; Doc. 50-7, pp. 52:1-53:2; Doc. 50-7, p. 56:11-23; Doc. 50-7, p. 62:3-11.

[22] The last  document in which Kuivila referred to his complaints about Defendant Johnson's alleged sexual harassment is a letter dated July 6, 2011 from Kuivila to the Trumbull County's Sheriff's Office, which was copied to the City's Law Director and City Manager as well as to the County Prosecutor and attorney Kenneth Myers. Doc. 50-10, pp. 85-87.  The letter to the Trumbull County Sherriff's Office was also sent to Newton Falls Finance Director Reimbold via email on July 6, 2011.  Doc. 50-10, p. 85.  In Kuivila's letter to the Trumbull County Sherriff, Kuivila indicated that he believed that Defendant Johnson had made a false complaint/allegation about him in retaliation for his filing of an EEOC complaint against her for sexual harassment.  Doc. 50-10, pp. 85-87.

of fact as to whether Kuivila engaged in protected activity as late as 2012.   However, Kuivila has not submitted evidence that the members of City Council who cast votes to terminate him had knowledge of new complaints that he made after 2010.  *See Cain v. Potter*, 2006 WL 3146435, * 4 (N.D. Ohio Oct. 31, 2006) (In instances where a decision maker accused of retaliation lacks "actual knowledge that the plaintiff employee engaged in Title VII protected activity, then the defendant employer cannot be held liable for retaliation under Title VII.").

Kuivila attempts to establish that City Council had knowledge of complaints that he made later than 2010 by arguing that there is evidence that Defendant Johnson complained and attacked him at Council meetings for complaining about her conduct and that City Council scrutinized and criticized him and his activities or proposals at Council meetings.  Doc. 53-1, pp. 4-5.  His attempt falls short because, while the evidence may show that Johnson complained about Kuivila and his 2010 EEOC filing such that City Council was aware of the 2010 EEOC charge and Johnson's resentment towards Kuivila over the filing of that charge, it does not show that Kuivila made additional complaints about sexual harassment after 2010 nor does it establish that City Council had knowledge of his post-2010 complaints if they were made.

Kuivila also appears to argue that constructive knowledge should be imputed to all members of council of post-2010 complaints he made, including to Defendant Haney.  Doc. 53-1, pp. 3-4, n. 2; Doc. 55, p. 3.   However, he has presented no evidence that any alleged post-2010 complaints were relayed by Haney or anyone else to any member of council.[23]  *See e.g., Burns v. Mahle Engine Components* USA, *Inc.*, 605 Fed. Appx. 522, 527 (6th Cir. Mar. 31, 2015) (rejecting constructive knowledge theory).   Additionally, to the extent that Kuivila

---

[23] Kuivila's reliance on *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) to argue that his alleged post-2010 complaints to Haney and to Mayor Waddell are sufficient to establish that the Council members knew of those later complaints is misplaced.   The portion of *New Breed* relied upon by Kuivila pertains to whether the employee engaged in protected activity, the first element, not whether the decision maker had knowledge of the protected activity, the second element.   793 F.3d at 1067 (cited by Kuivilia, Doc. 55, p. 3).

implies that Defendant Haney and/or Mayor Waddell,[24] although without power to terminate him, were biased against him and influenced City Council to retaliate against him because of his protected activity,[25] his own testimony refutes that implication.   For example, Kuivila testified there were no issues between him and Defendant Haney (Doc. 35-1, pp. 78:22-79:7) and he was not aware that Mayor Waddell was advocating for his termination (Doc. 35-1, p. 127:10-16).[26]

Thus, construing the evidence in the light most favorable to Kuivila, reasonable jurors could infer that the decision makers had knowledge of Kuivila's protected activity that occurred in May 2010, i.e., the filing of the 2010 EEOC complaint.   However, Kuivila has failed to present evidence from which reasonable jurors could conclude that a majority of City Council members –the decision makers who voted to terminate him – had actual knowledge of his alleged protected activity occurring after the filing of his 2010 EEOC charge. Thus, Kuivila's attempt to argue that a causal connection can be inferred because he complained through the end of 2012 and was terminated shortly thereafter in February 2013 fails.

### *Alleged retaliatory hostility*

Kuivila contends that City Council's hostility and criticism towards him over the years and/or Council's having allowed individuals to speak critically of him at Council meetings is evidence sufficient to create an inference of a causal connection between his protected activity and City Council's decision to terminate him.  Doc. 50-2, pp. 7-8; Doc. 53-1, p. 4.  However, he fails to demonstrate how such conduct establishes an inference of retaliatory motive with respect to his termination.  For example, Kuivila cites City Council's refusal to accept his OVI proposal as an example of City Council's retaliatory hostility.  Doc. 50-2, p. 8.   Yet, it is clear

---

[24] Mayor Waddell is not a defendant in this case.

[25] Though not labeled as such by Kuivila, this is known as the "cat's paw" theory of liability. "Under the cat's paw theory of liability, [the] focus [is] on whether another individual and not the actual decision maker 'is the driving force behind the employment action.'"  *New Breed*, 783 F.3d at 1069 (internal citations omitted).

[26] Also, Mayor Waddell described Kuivila as a friend.  Doc. 50-8, p. 66:17-23.

that some members of Council rejected his OVI proposal because they were opposed to OVI checkpoints as a matter of principle.  See Doc. 35-1, pp. 80:21-81:2  (Monteville opposed due to concerns that checkpoints were an infringement on civil liberties); Doc.50-8, p. 18:12-13 (Luonuonsu described as having a blanket opposition to OVI checkpoints).

Further, Kuvilia has not presented evidence that he was subjected to any higher level of scrutiny by Council after the protected activity than prior to it.   For example, Mayor Waddell testified that Johnson questioned Kuivila's contract in August of 2009, which was before she was on council and before any alleged instances of sexual harassment or complaints regarding the same.  Doc. 50-8, p. 15:9-10, 15-18.  Also, as testified to by City Finance Director Reimbold and Haney, when Kuivila's contract was approved, which was in September 2009, there was an attempt to rescind it through a referendum petition.[27]  Doc. 50-5, pp. 44:1-45:4; Doc. 50-7, p. 52:14-22.   Additionally, under Kuivila's contract, City Council had the ability to terminate Kuivila's employment with the City at any time.  Yet, City Council acted to terminate his Contract only after allegations of harassment by Kuivila towards two of his subordinates surfaced in January 2013, well over two years after his 2010 EEOC Complaint.

### *Multiple member decisionmaker*

As discussed in greater detail below, in a First Amendment retaliation case, the Sixth Circuit considered the appropriate standard for determining whether a board is liable for an adverse employment action.  *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006) (considering appeal from district court's grant of summary judgment).

As stated in *Scarbrough*, where a plaintiff seeks to hold a board liable, the plaintiff must demonstrate that the plaintiff's "protected conduct was a substantial factor in the Board's

---

[27] It is not clear who spearheaded the referendum effort but the evidence demonstrates that, even before Kuivila engaged in protected activity, his employment contract with the City was contentious.

decision, and not just in the votes of certain members" and bears "the initial burden of demonstrating that his protected conduct motivated the Board to take adverse employment action." *Id*. at 262.   In assessing whether a plaintiff can meet this burden and establish whether a board acted with an improper motive, the Sixth Circuit adopted a "but for" standard, i.e., "a board is liable for actions that it would not have taken 'but for' members acting with improper motive." *Id.*  In other words, "where improperly motivated members supply the deciding margin, the board itself is liable." *Id.*  Although decided in the context of a First Amendment claim, the "deciding margin" analysis in *Scarbrough* is instructive when evaluating whether a plaintiff can establish that a board, i.e., the decisionmaker, as opposed to an individual voting member, was improperly motivated in non-First Amendment cases.  *See e.g., Jackson v. Lowndes County School Dist.*, --- F.Supp.3d ---, 2015 WL 5021653, * 8-10 (N.D. Miss. Aug. 24, 2015) (applying "deciding margin" approach adopted in *Scarbrough* to a Title VII claim and noting that, in a retaliation claim, the plaintiff, under *Nassar*, must ultimately show that but for his protected activity, he would not have been terminated); *see also Kendall v. Urban League of Flint*, 612 F.Supp.2d 871 (E.D. Mich. 2009) (granting summary judgment on § 1981 claim in part because, under the "deciding margin" test set forth in *Scarbrough*, plaintiff could not demonstrate that one member of a voting group's racism influenced the vote of even one other board member).

Here, five Council members voted unanimously on February 12, 2013, to terminate Kuivila's Contract.[28]  Doc. 39-10, p. 1.  Of those five, Kuivila has testified that, during his time as Chief of Police, he had "no issues" with three (Hoffman, Beer, and Zamecnik), although he

---

[28] Mayor Waddell was a member of Council but only voted in the event of a tie.  Doc. 50-8, p. 6:17-19.  He did not vote on February 12, 2013, because there was no tie.  Doc. 39-10, p. 1.  Defendant Haney, the City Manager, attended Council meetings but had no vote. Doc. 50-6, p. 34:7-8.

had had "issues" with Johnson and Monteville.[29]  Doc. 35-1, p. 78:22-79:7.   Kuivila has presented no evidence from which it can be inferred that the other Council members were motivated to terminate him because of his protected activity, nor is there any evidence that the other members were influenced by any retaliatory motive harbored by Johnson.   Thus, even assuming that Defendant Johnson was motivated to terminate Kuivila because he had complained that she had sexually harassed him, she did not supply the deciding vote.   Accordingly, Kuivila's claim fails because he has not presented evidence to establish a genuine issue of material fact as to whether his protected conduct motivated Council, as opposed to one member of Council, to terminate him.

For the reasons discussed herein, the Court finds that Kuivila has failed to present evidence sufficient to establish an inference of a causal connection between his protected activity and his termination.  Accordingly, Kuivila is unable to establish a *prima facie* case of Title VII retaliation and Defendants are therefore entitled to summary judgment.  Alternatively, as discussed more fully below, even if Kuivila could establish a *prima facie* case of retaliation, his claim nonetheless fails because he cannot demonstrate that Defendants' articulated non-discriminatory reason for his termination was a pretext.

### 3.  Articulated non-discriminatory reason for termination

Defendants argue that, even if Kuivila were able to establish a *prima facie* case of Title VII retaliation, he was terminated for a legitimate non-discriminatory reason, i.e., the allegations lodged against him by two of his subordinates, Ashley Grunder and Officer Sheri

---

[29] Kuivila also stated he had issues with former Mayor Layshock but not with City Manager Haney.  Doc. 35-1, p. 78:22-79:7.  Layshock was recalled in November 2010.  Doc. 35-1, p. 127:6-9.

Jervis,[30] undermined Kuivila's ability to remain an effective leader.  Doc. 19, pp. 15-19.

Kuivila argues that the alleged non-discriminatory reason was a pretext.

Kuivila can show that Defendants' stated reason is merely a pretext in one of three ways: (1) by showing that Defendants' stated reason "has no basis in fact;" (2) by showing that Defendants' stated reason "did not actually motivate [their] challenged conduct;" or (3) by showing that the stated reason "was insufficient to warrant the challenged conduct." *Mickey, 516 F.3d at 526* (internal citations omitted).  A "plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Id.*

Under the "honest belief rule," "as long as an employer had an honest belief in its proffered non-discriminatory reasons for discharging an employee, the employee cannot establish that the reason was pretext simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)); *see also Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 598-599 (6th Cir. 2007).  "An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made." *Michael*, 496 F.3d at 599 (quoting *Majewski*, 274 F.3d at 1117) (internal quotations omitted).  In assessing whether an employer holds an "honest belief," the key inquiry is "whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Michael*, 496 F.3d at 598-599 (quoting *Smith*, 155 F.3d at 807) (internal quotations omitted); *see also Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911,

---

[30] When arguing pretext, Kuivila addresses Ashley Grunder's allegations against him but appears to disregard or overlook that there was another complaining party, Officer Sheri Jervis.

(6th Cir. 2013) (quoting *Smith*, 155 F.3d at 807).   It is not necessary that the employer's

decisional process be optimal or leave no stone unturned.   *Michael*, 496 F.3d at 599 (quoting

*Smith*, 155 F.3d at 807).

        **a.**      **Basis in fact.**

Kuivila is unable to show that there is no basis in fact to support the Defendants'

proffered legitimate non-discriminatory reason for termination.  It is undisputed that Grunder

complained orally and in writing to City Manager Haney about Kuivila's conduct towards her

and that an attorney for Grunder wrote to Haney and the Law Director about her allegations.

Doc. 39-1, p. 2, ¶¶ 7-11, 13; Doc. 39-5, p. 1.  It is also undisputed that Jervis complained orally

and in writing to Haney that Kuivila had created a hostile work environment because he

threatened her if she were to discuss information regarding Grunder and that the attorney who

represented Grunder also wrote to Haney and the Law Director regarding Jervis's allegations.

Doc. 39-1, p. 3, ¶¶ 12-13; Doc. 39-5, p. 2.  During his deposition, Kuivila acknowledged that his

wife had discovered inappropriate messages that had been exchanged between Grunder and him

(Doc. 35-1, pp. 90:8- 91:3) and that the letter he had written addressed to Grunder was not

appropriate (Doc. 35-1, p. 89:1-12).  Kuivila could not recall making comments about

Grunder's breasts after her return from maternity leave.  Doc. 35-1, p. 89:12-16.  However, he

acknowledged that he had probably made comments about her body and that such comments

would not be appropriate.  Doc. 35-1, p. 89:17-23.  Further, Kuivila acknowledged that he had

shown Jervis the letter he had drafted but not sent to Grunder and admitted that he had told

Jervis not to discuss it with anyone because it was no one's business.  Doc. 35-1, p. 89:1-9.  He

also agreed that the draft letter to Grunder was not appropriate.  Doc. 35-1, p. 89:10-11.

### b.  <u>Actual Motivation.</u>

Next, Kuivila is unable to show that the allegations lodged against him by his subordinates did not actually motivate City Council to terminate his Contract.   On January 28, 2013, shortly after Grunder, Jervis and their attorney submitted complaints to Haney, City Council met during a regular session and adjourned into executive session "for the purpose of investigation of complaints against the Police Chief."  Doc. 39-6, p. 1, ¶ 4; Doc. 39-8, p. 4. Following adjournment of executive session, a motion "to direct the City Manager and Law Director to determine steps for disciplinary action for the Police Chief up to and including termination of his contract and to advise Counsel of such" was made and passed unanimously. Doc. 39-6, p. 1, ¶ 4; Doc. 39-8, p. 4.   On February 4, 2013, City Council met during a regular session and adjourned into executive session "to consider disciplinary action for the Police Chief up to and including termination."  Doc. 39-6, p. 2, ¶ 5; Doc. 39-8, p. 8.  Following adjournment of executive session, a motion "that City Council begin removal of the Police Chief for discipline reasons and invoke Section 11, Part D, of his contract and begin the pre-discipline hearing process" was made and passed unanimously.  Doc. 39-6, p. 2, ¶5; Doc. 39-8, p. 8.  On February 12, 2013, City Council held an emergency meeting.  Doc. 39-6, p. 2, ¶¶ 6-7. A motion was made and seconded to enter into executive session "for the purpose of personnel in reference to employment or dismissal of the Chief of Police."  Doc. 39-6, p. 2, ¶ 7; Doc. 39-10, p. 1.

Mayor Waddell testified that he was aware that sexual harassment allegations had been made against Kuivila in January 2013 and that Grunder's written statement regarding her allegations was shared with Council during the February 12, 2013, executive session preceding

Kuivila's termination.  Doc. 50-8, pp. 33:9-20, 34:3-21, 35:1-38:16.   The only other member of

Council deposed, Defendant Johnson, stated that she was aware of Grunder's and Jervis's

allegations against Kuivila and that discussions occurred during executive sessions regarding

the  allegations. Doc. 50-6, pp. 31:3-33:8 (referencing Exhibit 10, Doc. 50-10, pp. 48-52),

33:19-24, 34:16-36:15, 45:15-24.

Immediately after the February 12, 2013, executive session, a motion to add to the

agenda Ordinance 2013-02: *An Ordinance Terminating the Employment Agreement Between the*

*City of Newton Falls and Police Chief John Kuivila and Declaring an Emergency* passed

unanimously.  Doc. 39-6, p. 2, ¶ 7; Doc. 39-10, p. 1; Doc. 39-11.   The Ordinance contained the

following two Whereas Clsuses:

> WHEREAS, Newton Falls City Council exercise their rights to terminate
> the Police Chief's contract under Section 11, Part A of his Employment
> Agreement; and
>
> WHEREAS, City Council believes the Chief of Police has undermined
> his ability to remain an effective leader.

Doc. 39-11.

Based on the foregoing evidence, reasonable jurors could not conclude that the

allegations lodged against Kuivila by his subordinates did not motivate City Council to

terminate Kuivila's Contract.  As detailed above, shortly after the complaints made by Grunder

and Jervis against Kuivila, City Council began discussions regarding those complaints and

began considering disciplinary action, up to and including termination.  Moreover, the evidence

shows that the allegations by Kuivilas subordinates were raised and discussed during the

executive session that immediately preceded the unanimous vote to terminate him.

### c. __Sufficiency__.

Kuivila also is unable to demonstrate that his admittedly inappropriate conduct toward his subordinates was insufficient to warrant his termination.  In arguing that the proffered reason was insufficient to support his termination, Kuivila relies on the fact that Haney told City Council that there was not enough evidence for Kuivila to be disciplined on sexual harassment charges.  Doc. 50-2, p. 11 (emphasizing Mayor Waddell's deposition testimony, Doc. 50-8, p. 37).  Even if there were concerns over substantiating the allegations in the context of a disciplinary termination under Section 11(D) of Kuivila's Contract, City Council had the authority, and exercised its authority, to terminate Kuivila under Section 11(A) without establishing a disciplinary violation.  Doc. 21-1, p. 3.  It is undisputed that, shortly after the complaints by Kuivila's subordinates surfaced, City Manager Haney investigated the matter and Council unanimously determined that Kuivila had "undermined his ability to remain an effective leader" and terminated him under Section 11(A).  Doc. 39-11.  It is undisputed that Kuivila's subordinates made complaints of sexual harassment and/or a hostile work environment against Kuivila and Kuivila admits that his conduct towards the subordinates was inappropriate.  As a result, he cannot demonstrate that City Council did not have a sufficient basis to terminate him based on its determination that he had undermined his ability to remain an effective leader.  This is especially so in light of the fact that, under the Contract, City Council had the authority to terminate Kuivila's contract for no reason at all.

To the extent that Kuivila claims that pretext can be inferred because there was an inadequate investigation of the subordinates' complaints or insufficient information considered by Council, his argument is without support.  As discussed above, Johnson and Mayor Waddell

both testified that City Council was aware of or was provided with information regarding the subordinates' allegations against Kuivila.  Also, before City Council voted to terminate Kuivila, it held three executive sessions, including the one held on February 12, 2013.  The minutes reflect that those sessions were held for the purposes of: (1) "investigation of complaints against the Police Chief" (Doc. 39-6, p. 1, ¶ 4; Doc. 39-8, p. 4); (2) "consider[ing] disciplinary for the Police Chief up to and including termination" (Doc. 39-6, p. 2, ¶¶  5, 7; Doc. 39-8, p. 8); (3) "personnel in reference to employment or dismissal of the Chief of Police" (Doc. 39-10, p. 1). The minutes thus make clear that City Council did not terminate Kuivila without receiving information and providing due consideration.

To demonstrate pretext, Kuivila is required to "produce sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Mickey*, 516 F.3d at 526.  Here, City Council reasonably relied on particularized facts regarding allegations against Kuivila by two of his subordinates and proceeded with its decision to terminate after multiple meetings.  *See Michael*, 496 F.3d at 589-599 ("The key inquiring in assessing whether an employer holds an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action.") (internal citations and quotations omitted).  Further, it is not necessary that the employer's decisional process be optimal or leave no stone unturned.  *Id.* at 599.

Based on the foregoing, the Court concludes that Kuivila has failed to present sufficient evidence from which a jury could reasonably conclude that Defendants proffered reason was a

pretext for retaliation or that Defendants did not have an honest belief in their proffered non-discriminatory reason for terminating Kuivila.[31]

      For the reasons set forth herein, summary judgment in favor of Defendants on Kuivila's Title VII claim is warranted because he is unable to establish a *prima facie* case of retaliation. Alternatively, even if Kuivila was able to establish a *prima face* case of retaliation, Defendants have offered a legitimate non-discriminatory reason for terminating Kuivila and Kuivila has not presented evidence to demonstrate that the proffered reason was a pre-text.

**B.      Section § 1983 First Amendment Retaliation Claim – Count II**

      Kuivila alleges in his Amended Complaint that Defendants retaliated against him for exercising his First Amendment rights, "including, but not limited to, Kuivila's conduct in reporting, complaining, and in exposing the sexual harassment of Defendant Johnson as a matter of public concern."[32]  Doc. 21, p. 11, ¶ 45.  Defendants, making many of the same arguments advanced in connection with Kuivila's Title VII retaliation claim, argue that they are entitled to summary judgment because Kuivila is unable to establish a causal connection between his alleged protected activity and the adverse employment action, i.e., his February 2013 termination.

    **1.      <u>Applicable law</u>**

      To succeed on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that "(1) he engaged in a constitutionally protected activity; (2) he was subjected to

---

[31] Kuivila argues that Defendants failed to comply with the requirements of Ohio's Sunshine Law and the City's Charter in connection with the February 12, 2013, meeting and contends the alleged noncompliance supports an inference that Defendants' proffered reason for terminating him was pretextual.  Kuivila's claims that state procedural requirements were not followed have been addressed and rejected by the Trumbull County Court of Common Pleas.  Doc. 57-1.  In any event, Kuivila has not shown that such violations, had they occurred, establish that Council "did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Mickey*, 516 F.3d at 526.

[32] Kuivila's claim that Defendants retaliated against him for speech relating to Defendant Layshock have been previously dismissed.  Doc. 32, Doc. 38.

adverse action or deprived of some benefit; and (3) the protected speech was a 'substantial' or 'motivating factor' in the adverse action." *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) (citing *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003)); *see also Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

If a plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to show "that it would have reached the same decision . . . even in the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Scarbrough*, 470 F.3d at 262; *Spencer*, 506 Fed. Appx.  at * 398; *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010).  Unlike the burden-shifting framework that applies in a Title VII case, if the defendant meets its burden of showing that the employment decision would have been the same even in the absence of the protected activity, the burden does not shift back to the plaintiff to demonstrate pretext.  *Eckerman v. Tennessee Dept. of Safety*, 636 F.3d 202, 208, n. 4 (6th Cir. 2010).

## 2.  **Causation**

Defendants do not challenge Kuivila's ability to meet his burden with respect to the first two elements of a *prima facie* case of a First Amendment retaliation claim.  However, they contend that he is unable to establish the third element, causation.

A party opposing a motion for summary judgment "may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent." *Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1055 (6th Cir. 2001) (quoting *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, (6th Cir. 1997)).  Instead, to prevail, "the employee must link the speech in question to the defendant's decision to dismiss [him]." *Id.*; *see also*

*Spencer v. City of Catlettsburg*, 506 Fed. Appx. 392, * 395 (6th Cir. 2012); *Neiman v. Reid*, 2015 WL 1476779, * 13 (N.D. Ohio Mar. 31, 2015).

In addressing the element of casual connection, the Sixth Circuit has "interpreted 'motivating factor' to mean the but-for cause, 'without which the action being challenged simply would not have been taken.'" *Neiman*, 2015 WL 1476779, * 12 (quoting *Vereecke*, 609 F.3d at 400).   While close temporal proximity may alone be "sufficient to establish the causation element of a First Amendment retaliation claim . . .  the more time passes between the protected activity and the adverse action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Spencer*, 506 Fed. Appx. at * 397 (quoting *Mickey*, 516 F.3d at 525) (internal quotations omitted).

Further, where a decision to take adverse action has been made by a board, the Sixth Circuit has held that "a board is liable for action that it would not have taken 'but for' members acting with improper motive." *Scarbrough*, 470 F.3d at 262.   "Thus, where improperly motivated members supply the deciding margin, the board itself is liable." *Id.*  However, evidence that one voting member of a city council may have shown a discriminatory animus towards a plaintiff does not establish that council itself was motivated by discrimination. *See Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 406-407 (6th Cir. 1999) (citing *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994)); *see also Kendall v. Urban League of Flint*, 612 F.Supp.2d 871, 876-884 (E.D. Mich. 2009) (discussing *Scarbrough* and other cases addressing evidence required to demonstrate that motivation of one member of a group influenced the vote of the group).

As discussed more fully above in relation to Kuivila's Title VII claim, there is insufficient evidence from which reasonable jurors could conclude that City Council was aware

of alleged complaints made by Kuivila after 2010.  Thus, in light of the significant gap in time between Kuivila's protected speech in 2010 and his termination in February 2013, he must produce other circumstantial evidence to establish that City Council's motive in terminating him was to retaliate against him because of his complaints about alleged sexual harassment by Defendant Johnson.  *See e.g. Neiman*, 2015 WL 1476779, * 14.  Kuivila must causally link his alleged protected speech to Defendants' decision to terminate his Contract.  *Cockrel*, 270 F.3d 1036, 1055 (6th Cir. 2001) (quoting *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, (6th Cir. 1997)).  However, Kuivila has produced no evidence to establish such a link.

To the extent that Kuivila claims that, because Council members scrutinized, challenged, and/or did not support him or his department's initiatives, he was subjected to other adverse employment action closer in time to the filing of his 2010 EEOC filing or that that conduct is evidence that City Council was motivated to retaliate against him because he had engaged in protected activity, his claim is without merit.  For example, although City Council did not support his OVI proposal, Defendant Monteville rejected it because of concerns that checkpoints were an infringement on civil liberties (Doc. 35-1, pp. 80:21-81:2) and Defendant Luonuonsu was described as having a blanket opposition to OVI checkpoints (Doc.50-8, p. 18:12-13).  Further, as one Circuit has stated, where a plaintiff's First Amendment retaliation claim is based on bad-mouthing or verbal threats, "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation."  *Nunez v. City of Los Angeles*, 147 F.3d 867, 874 (9th Cir. 1998).

Additionally, the alleged instances of retaliatory harassment consist primarily of scrutiny by City Council regarding Kuivila's work and the City's operations.  However, "increased scrutiny of work is not tantamount to an adverse employment action" and "[i]f every low

evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." *Henry*, 2015 WL 5729344, * 7 (internal citations omitted); *see also Bradley v. Arwood*, 2014 WL 5350833, * 11 (E.D. Mich. Oct. 20, 2014) ("an employer's commencement of an investigation" and "criticisms, accusations, threats, or bad mouthing" do not constitute adverse employment actions) (internal citations and quotations omitted).  Also, as discussed above, Kuivila has not presented evidence that City Council's questions regarding his work or his department's operations were more severe or pervasive after he filed the 2010 EEOC charge than before.

To the extent that Kuivila contends that there is evidence that Defendant Johnson acted with a retaliatory animus because of Kuivila's complaints against her (Doc. 50-2, p. 24, n. 33) and that such evidence is sufficient to defeat summary judgment, his argument fails because evidence that one voting member of a city council may have shown a discriminatory animus regarding a plaintiff does not establish that council itself was motivated by discrimination. *See Mount Elliott Cemetery Ass'n*, 171 F.3d at 406-407; *see also Kendall*, 612 F.Supp.2d at 876-884.   Here, the vote to terminate Kuivila was unanimous and he presents no evidence that the four other Council members who voted to terminate his Contract were motivated by a desire to retaliate against him because he engaged in constitutionally protected speech.

Since Kuivila cannot show that Johnson, assuming that she was an improperly motivated member of Council, supplied the deciding margin to terminate him, he is unable to establish that Defendants, including the City and individual Defendants, are liable for First Amendment retaliation. *Scarbrough*, 470 F.3d at 262; *see also Jeffries v. Harleston*, 52 F.3d 9, 14 (2nd Cir. 1995) (a majority of votes based on untainted motives serves to break any causal connection

between tainted motives of members and the ultimate adverse decision such that any tainted motives of members could not cause a cognizable injury to the plaintiff); *see also Kendall*, 612 F.Supp.2d at 880 (discussing the *Jeffries* case, cited in *Scarbrough*, and noting that, where a majority of the board voting against the plaintiff had no retaliatory motive, "*all* of the defendants (the individuals as well as the board itself) were entitled to judgment as a matter of law.").

As discussed more fully above, even if Kuivila had some evidence of a causal link between his protected speech and his termination, the City has met its burden to show "that it would have reached the same decision . . . even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287; *see also Scarbrough*, 470 F.3d at 262; *Spencer*, 506 Fed. Appx. at *6.  Kuivila has failed to produce evidence sufficient to raise a genuine issue of material fact with respect to Defendants' proffered reason for terminating him.  *See e.g., Spencer*, 506 Fed. Appx. at 398 (finding that district court properly granted summary judgment in favor of employer where there was sufficient evidence that employer would have taken same adverse action notwithstanding the protected speech).  The inquiry ends at this point since, unlike the burden-shifting framework in a Title VII case, if a defendant can establish that the employment decision would have been the same even in the absence of the protected activity, the burden does not shift back to the plaintiff to demonstrate pretext.  *Eckerman*, 636 F.3d at 208, n. 4.

For the reasons set forth above, summary judgment in favor of Defendants on Kuivila's First Amendment retaliation claim is required because there is insufficient evidence from which reasonable jurors could find a causal link between Kuivila's protected speech and the Defendants' adverse employment decision.  Alternatively, even if Kuivila could establish a

*prima face* case of First Amendment retaliation, summary judgment is warranted because there is insufficient evidence from which reasonable jurors could conclude that Defendants would not have terminated him in the absence of his protected activity.

### VI. Conclusion

For the reasons set forth herein, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment (Doc. 39) and **DISMISSES WITH PREJUDICE** Kuivila's claims against Defendants.

**IT IS SO ORDERED.**

Dated: February 11, 2016

KATHLEEN B. BURKE
United States Magistrate Judge

40